C. D. BROWN et ux., Appellants,

v.

Mike NELMS, Appellee.

No. 16516.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 24, 1964.

918

Woodruff, Hill, Bader & Kendall, and David M. Kendall, Jr., Dallas, for appellants.

Lancaster Smith, Dallas, for appellee.

MASSEY, Chief Justice.

The appeal is from an order sustaining a plea of privilege. Suit was brought because of negligence alleged to have amounted to proximate cause of an auto-

mobile collision, and of the injuries and property damage resulting therefrom to plaintiffs, C. D. Brown et ux. The collision occurred in Montague County, Texas. Defendant Mike Nelms filed the plea of privilege to transfer the suit to Dallas County. The plaintiffs countered with controverting affidavit executed by their attorney, by which they sought to maintain venue in Montague County under Subdivision 9a, "Negligence" of Vernon's Ann.Tex.St. Art. 1995, "Venue, general rule".

We have concluded that the order sustaining the plea of privilege should be reversed.

At the venue hearing evidence was elicited from the defendant Mike Nelms, as well as from C. D. Brown, plaintiff. While their account of the collision differs in minor particulars, we have concluded that in any event the aggregate of all the evidence is of such character that to find that the defendant was not guilty of negligence proximately resulting in the Montague County collision, and in the injuries and damages of the plaintiffs, would be against the greater weight and preponderance of the whole of the evidence. Of this, more anon.

■ The matter of a theoretical finding by the trial court that the plaintiffs had not established their cause of action by a preponderance of the evidence in satisfaction of requirements under Subdivision 9a is not the only matter we are required to examine in the instant appeal. There were no findings of fact or conclusions of law. Therefore the burden of the plaintiffs on their appeal is to negative every hypothesis which might have served as a premise for the court's order sustaining the defendant's plea of privilege.

One theory, or theories, to be considered to have perhaps been that upon which the court entered its order would be that since the plaintiffs had at an earlier time filed the same suit in Dallas County against the same defendant, in which they had taken a voluntary nonsuit prior to the time it was filed in Montague County, the later filed suit was barred;—that plaintiffs were estopped from filing another suit in any county other than that in which they filed their original suit;—that right to maintain venue in any other county was forfeited;—and/or that the plaintiffs were required, before they could file the suit in Montague County, to seek reinstatement of the suit previously filed and voluntarily nonsuited.

■ None of such, individually or collectively, would serve as a proper premise upon which an order sustaining defendant's plea of privilege might be based. Where a suit is terminated voluntarily the defendant is discharged and litigation is ended. Thereafter any prosecution of the same suit must be by commencing an action *de novo* (excepting upon a successful motion by the plaintiff to obtain an order vacating the previous proceedings and a reinstatement of the cause to a status no different from that which would have obtained had it never been dismissed or nonsuited), and the suit as brought *de novo* may be instituted in any court of competent jurisdiction. This court so held in Wiley v. Joiner, Tex.Civ.App., 1949, 223 S.W.2d 539. See 20 Tex.Jur.2d, p. 224 et seq., "Dismissal, Etc.", IV, "Effect of Termination", § 40, "In general", and § 42, "As bar to subsequent suit". It is to be noticed that no plea of privilege was ever filed in the Dallas County suit.

Another theory to be considered to have perhaps been that upon which the court entered the order complained of would be that the affidavit to the plaintiffs' controverting plea to the defendant's plea of privilege was insufficient.

The plaintiffs did not, themselves, sign and verify the controverting affidavit. Their attorney did sign and verify it. The plaintiffs' original petition setting forth their cause of action against the defendant (admittedly adequate and sufficient to state a cause of action predicated upon the defendant's negligence) was adopted by the controverting affidavit as though it was

made a part thereof. A copy was attached as an exhibit. It was additionally averred that the "allegations" of such petition were true and correct. The verification of the controverting affidavit reads as follows: "Before me, the undersigned authority, on this day personally appeared Robert P. Woodruff, known to me to be the person whose name is subscribed below and by me being first duly sworn, upon oath stated that he is the attorney for the Plaintiffs, C. D. Brown and Lorain Brown, in the above entitled and numbered cause, and that to his knowledge the allegations, denials and facts set out in the controverting plea are true and correct."

It is observed that the defendant's attorney argued before the trial court that the controverting affidavit, on its face, discloses that the attorney's oath was based upon hearsay. With this we do not agree. Of course the hypothesis is somewhat ridiculous, but so far as the allegations of the controverting affidavit (and of the adopted original plaintiffs' petition) are concerned, it would not be beyond the realm of possibility to assume that attorney Woodruff was in the automobile with the plaintiffs at the time the collision occurred, that he was a licensed physician as well as an attorney and that he attended their injuries, and that he was learned in the matter of monetary damages incident to automobile collision damage and was prepared to give sworn evidence as to their loss in respect to their automobile. Further, it might be assumed that attorney Woodruff interviewed the defendant in person, took a statement from him or officiated when his deposition was taken.

Of this we believe the defendant's attorney to have been conscious, for at the plea of privilege hearing he put attorney Woodruff on the stand and proceeded to elicit testimony from him which established that he did, in fact, make the affidavit upon information obtained as result of investigating the collision and talking to witnesses. It is of interest to note that no question was asked of him about what he learned from the lips of the defendant, or even whether he had interviewed him.

But we believe that it would be immaterial of consideration by the court whether established by testimony or stipulation of counsel that the affidavit was based wholly on "hearsay", for in the test to be made of the sufficiency of the affidavit a court should not consider such. What is proper to consider is the affidavit and oath, exclusively in and of themselves.

Whether the individual who has made the affidavit might, by reason thereof, be subject to charge and conviction for perjury is a matter which is to be left for attention in a criminal proceeding, of no concern to the trial judge when he sits for purposes of hearing a plea of privilege. It would not be proper to impeach the controverting affidavit of him who was the affiant, even by his own testimony. If such should constitute testimony admitted on the hearing it should not be given consideration. McDonald, Texas Civil Practice, p. 450 (as supplemented) "Venue", § 4.49 "(Reply to Plea of Privilege)—(III) Contents".

There is no question but that if the controverting affidavit had been executed by the plaintiffs themselves it would have been sufficient. Being proper for them to have made the affidavit, it could be made by their agent or attorney. Texas Rules of Civil Procedure, rule 14, "Affidavit by Agent". This court has in recent years had occasion to pass on the question. See Nunneley v. Weiler, Tex.Civ.App., 1951, 244 S.W.2d 707, to the opinion in which we adhere.

We revert to the matter of the nature of the collision and proof thereof. It is clear from the record that there is no doubt but that the collision occurred in Montague County and that the plaintiffs did sustain injuries and property damages as proximate result thereof.

The true question relates to the matter of the defendant's negligence, and

to the matter of whether such negligence, if established, amounted to a proximate cause. As we see it in this case the trial court must be treated as having "refused to find negligence", and, dependent first upon our manifest opinion that he erred in such refusal, be further treated as having "refused to find that such negligence amounted to a proximate cause of the collision". The burden was cast on the plaintiffs to plead, prove, and obtain affirmative fact findings that the defendant was guilty of negligence which amounted to a proximate cause of the collision and their resulting injuries and damages under the subdivision of the general venue statute selected by them as the legal premise for their right to maintain their suit in the county in which it was filed. Clark, Venue in Civil Actions, Ch. 9A, "Negligence", Par. 5, "Proof Necessary to Sustain Venue".

The collision occurred about four miles east of Bowie, Texas, on U. S. Highway No. 287, on November 2, 1962, at approximately 5:00 P.M., at a time when the weather was cool and dry. Whether the pavement was wet or dry, or whether it had any character of foreign substance on it of the nature of dirt or pebbles is not shown. It was a paved or "black-topped" highway approximately twenty-two (22) feet in width, with graveled shoulders to either side of the pavement. The defendant was driving his automobile in a westerly direction along with other traffic headed in the same direction. The plaintiffs were driving in an easterly direction and meeting up with the automobile driven by the defendant. Shortly before the time of the collision the defendant had passed another automobile headed in the same direction he was driving. He was proceeding at about fifty-five (55) miles per hour, and was approaching the next automobile ahead of him going the same direction, west, when he suddenly realized that he was approaching it more rapidly than he had anticipated. This other automobile was traveling at approximately forty (40) miles per hour. The defendant applied his brakes slightly, only to discover that he was still approaching the other automobile too rapidly to suit him, so he applied his brakes more forcefully. When he did this the rear end of his automobile jerked to the left, and in order to counter this motion he cut his front wheels to the left so that his automobile was driven over onto the south and left-hand, to him, side of the pavement. Simultaneously the automobile of the plaintiffs was in the act of passing that of the defendant. The result was that the front of the defendant's automobile struck the side of that of the plaintiffs'.

There was no evidence of anything other than the speed of the defendant's automobile, and/or the application of its brakes, which caused it to be driven onto the south side of the highway,—or be so out of control that in regaining control of it the defendant drove onto the south side of the highway, and into the automobile of the plaintiffs. The evidence did not raise the issue of unavoidable accident, and therefore it could not have been or should not have been considered to have played a part in the collision. The introduction of evidence which might amount to "excuse" for the automobile having been driven onto or allowed to be on the south side of the center of the highway would be the defendant's burden. No evidence upon the matter of excuse was introduced. The issue was not raised and is not a matter for our consideration. Therefore we are of the opinion that it could not have been or should not have been considered to have played any part in the collision for purposes of the plea of privilege hearing.

We have concluded that it was undisputed that the defendant drove his automobile onto the left-hand, to him, side of the highway. That being true the defendant was guilty of negligence *per se* for such an act is in violation of V.A.T.S., Art. 6701d, "Uniform Act Regulating Traffic on Highways", Art. VI, "Driving on Right Side of Roadway; * * *", § 52, "Drive on right side of roadway; excep-

tions". The defendant's negligence was established as a matter of law.

That the negligence was a proximate cause of the collision which occurred may not be considered to have been established as a matter of law. For purposes of our review (there having been no findings of fact or conclusions of law), we must consider that the trial court found that the negligence was not a proximate cause when tested by a preponderance of the evidence, or that he refused to make such a finding. To make or refuse to make the finding was the exclusive province of the "finder of fact". We do not believe that this court has the authority to make a contrary affirmative fact finding, but it is our duty to reverse the trial court's judgment and remand the cause if we reach the conclusion that failure or refusal of the court in that respect was against the great weight and preponderance of the evidence. We have reached this conclusion.

Judgment is reversed and the cause remanded.